**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**and**

**Heather Yebba, Plaintiff–Intervenor**

**v.**

**NORTHLAKE FOODS, INC., d/b/a Waffle House Defendant.**

**No. 8:04 CV 2156 T 23EAJ.**

United States District Court, M.D. Florida, Tampa Division.

July 28, 2005.

Carla Johanna Von Greiff, Equal Employment Opportunity Commission, Tampa Area Office, Tampa, FL, Muslima Lewis, U.S. Equal Employment Opportunity Commission, Lauren G. Dreilinger, U.S. Equal Employment Opportunity Commission, Miami, FL, James Moten Thompson, Nelson, Bisconti & Thompson, L.L.C., Tampa, FL, for Heather Yebba, Intervenor Plaintiff.

Thomas C. Garwood, Jr., Ford & Harrison LLP, Daniel P. O'Gorman, Ford & Harrison LLP, Orlando, FL, for Defendant.

### ORDER

JENKINS, United States Magistrate Judge.

Defendant's **Motion for Protective Order to Prohibit Plaintiff EEOC from Disclosing Mediation Communications and Information Obtained During Mediation** (Dkt. 24), filed June 14, 2005, and Plaintiff EEOC's **Response to Defendant's Motion for Protective Order** (Dkt. 29), filed June 24, 2005, are before the court. The undersigned heard oral argument on the issues presented in the motion on July 27, 2005.

*Background*

On September 28, 2004, the EEOC filed a complaint against Defendant under Title VII of the Civil Rights Act (Dkt. 1). The complaint alleges that Heather Yebba, Defendant's former employee, was sexually harassed during her employment by one of Defendant's customers and that Defendant failed to prevent the harassment. The court granted Yebba's Motion to Intervene (Dkt. 9) on December 1, 2004.

The parties attended court-ordered mediation on April 19, 2005 (*See* Dkts. 13, 21). At mediation, Yebba and Defendant agreed to a settlement. The settlement agreement contains a confidentiality provision prohibiting the Yebba and Defendant from disclosing the amount of the settlement (Dkt. 24 at 2–3).

After the mediation, Defendant requested that the EEOC dismiss its claims for victim-specific relief (Dkt. 24 at 4 fn. 3; Dkt. 29 at 5). However, the EEOC informed Defendant that the amount of its settlement with Yebba must be disclosed before the EEOC will agree to dismiss the victim-specific claims against Defendant (*Id.*). To date, a dismissal has not been filed with the court.

EEOC does not dispute that it learned of the amount of the settlement between Yebba and Defendant as a result of the mediation nor does it dispute that the details of the settlement between Yebba and Defendant are confidential.[1]

Defendant filed its **Motion for Protective Order** (Dkt. 24) to prevent the EEOC from disclosing the amount of its settlement with Yebba.

*Discussion*

Defendant contends that Local Rule 9.07(b), M.D. Fla., prohibits the EEOC from disclosing the amount of the settlement between Yebba and Defendant.[2] In

---

1. Some of the historical facts underlying what happened at the mediation conference are disputed by the parties. Whether EEOC was present or not during the entire mediation is irrelevant, however, to the issues presented in the motion.

2. Local Rule 9.07(b), M.D. Fla., states: "All proceedings of the mediation conference, in-

cluding statements made by any party, attorney, or other participant, are privileged in all respects." Additionally, the Alternative Dispute Resolution Act of 1998 requires district courts to provide litigants with at least one alternative dispute resolution process. *See* 28 U.S.C. § 652(a). It provides that "each district court shall, by local rule ..., provide for the confidentiality of the alternative dispute

support, Defendant cites cases that emphasize the importance of confidentiality with respect to mediation communications. *See Sheldone v. Pennsylvania Turnpike Comm'n,* 104 F.Supp.2d 511, 513 (W.D.Pa. 2000) (recognizing the mediation privilege because "[i]f participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner . . .").

Defendant argues further that to permit the EEOC to disclose the amount of the settlement would discourage defendants in employment discrimination cases from settling with plaintiff-intervenors because Defendant never would have divulged certain information during the mediation if it thought the EEOC could disclose it (Dkt. 24 at 3, 7). Defendant also cites a provision from the EEOC website indicating that the agency recognizes the importance of preserving the confidentiality of information disclosed during mediation. (Dkt. 24 at 6 fn. 5, citing http://www.eeoc.gov/mediate/facts/html.)

The EEOC counters that because it is acting in the public interest, the public has the right to see and comment on the agency's effectiveness in discharging its public policy objective of preventing employment discrimination (Dkt. 29 at 9). The cases the EEOC cites to support this public policy argument, however, discuss the public's right to access judicial records and the extraordinary showing a party must make to seal a consent decree. *See Fed. Trade*

*Comm'n v. Standard Fin. Management Corp.,* 830 F.2d 404 (1st Cir.1987) (incorporating financial records expressly referred to in the parties' consent decree as the basis of the settlement amount into the judicial record due to the strong presumption in favor of public access to court filings); *EEOC v. Nat'l Children's Ctr., Inc.,* 98 F.3d 1406 (D.C.Cir.1996) (reversing a district court's sealing of a consent decree due to the strong presumption in favor of public access).

Citing the EEOC's Regional Attorney's Manual, the EEOC states that it is obliged to disclose the settlement amount under its internal regulations.[3] The EEOC also argues that Defendant was aware of its practice of disclosing the amounts of private settlements because it mailed Defendant, shortly after the commencement of litigation in this case, a draft consent decree that contained a blank for the amount of the settlement between Defendant and Yebba (Dkt. 29 at 4).

The most on-point case cited by the parties is *EEOC v. Rush Prudential Health Plans,* 1998 WL 156718 (N.D.Ill. 1998). In *Rush,* the EEOC filed suit against Rush, alleging violations of Title I of the ADA for failing to accommodate plaintiff-intervenor Johnston's disability and for discharging her because of her disability. *Id.* at *1. While the EEOC and Rush were engaged in settlement negotiations, Johnston and Rush agreed to a settlement amount. *Id.* The settlement agreement contained a confidentiality provision prohibiting either party from disclosing the amount of the settlement. *Id.*

---

resolution processes and to prohibit disclosure of confidential dispute resolution communications." 28 U.S.C. § 652(d).

**3.** The manual states that "[o]nce the Commission has filed suit, the agency will not enter into settlements that are subject to confidentiality provisions . . . resolutions of suits must contain all settlement terms and be filed in

the public court record." *See http://www.eeoc.gov/ li tigation/manual/3-4- a_settlement _standards. html # section2e.* It does not speak to the resolution of actions between plaintiff-intervenors and defendants in actions initiated by the EEOC. The manual does evidence, however, the EEOC's practice of including settlement amounts in consent decrees.

While the EEOC and Rush were negotiating a consent decree, the EEOC filed a motion to compel the disclosure of the settlement amount. *Id.* The EEOC argued that the settlement amount was relevant to its analysis of whether it should continue the litigation or enter into a consent decree. *Id.* at \*2.

After weighing the public policy interest of the EEOC in enforcing federal employment discrimination laws against Rush's interest in nondisclosure, the court found that public policy considerations supported disclosure of the settlement amount subject to a protective order because "EEOC is entitled to discover the settlement amount for the purpose of formulating its litigation strategy."[4] *Id.* at \*5.

Here, the EEOC admits that it already knows the amount of the settlement between Yebba and Defendant and even contends that it was instrumental in its negotiation (Dkt. 29 at 8). Further, the settlement in this case was the result of mediation communications that both Defendant and the EEOC agree are confidential. The fact that the EEOC's internal policies and procedures require the disclosure of the settlement amount is not compelling. As the *Rush* court observed, the issue of whether the settlement amount must be disclosed in a possible consent decree between the EEOC and Defendant is left to the parties to determine.

Therefore, after weighing the interests of both parties, the court finds that the EEOC does not present sufficient justification for permitting it to disclose the results of confidential mediation communications. The public policy considerations cited by EEOC do not trump the clear directive of this court's Local Rule regarding confidentiality of mediation proceedings.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) Defendant's **Motion for Protective Order** (Dkt. 24) is **GRANTED**. The EEOC is ordered to not disclose any communications exchanged between the parties during mediation of the case or information obtained during mediation, including the amount of the settlement between Defendant and Yebba.

---

4. The court stated: "Although the EEOC desires for deterrence reasons to include the settlement amount in a consent decree, that issue is left to the parties to determine. If the EEOC insists on inclusions of the amount in a consent decree and Rush refuses, no consent decree will be forthcoming." *Id.*